## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |
| LUC A. DESPINS, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 24-05117 (JAM) |
| | Re: ECF No. 18 |
| Plaintiff, | |
| v. | |
| META PLATFORMS INC., | |
| Defendant. | |

### <u>APPEARANCES</u>

George Angelich
Eric Roman
Patrick Feeney
ArentFox Schiff LLP
1301 Avenue of Americas, 42nd Floor
New York, NY 10019

    and

Jin Yan (argued)
ArentFox Schiff LLP
1717 K St. NW
Washington, D.C. 20006

       *Counsel for Defendant Meta Platforms Inc., Movant*

Patrick R. Linsey (argued)
James C. Graham
Robert B. Flynn
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee for the estate of*
*Mr. Ho Wan Kwok, Respondent*

## MEMORANDUM OF DECISION AND
## ORDER DENYING MOTION TO DISMISS COMPLAINT

Julie A. Manning, United States Bankruptcy Judge

## I.      INTRODUCTION

Before the Court is the motion to dismiss (the "Motion to Dismiss") filed by defendant

Meta Platforms Inc. ("Meta") seeking dismissal of this adversary proceeding.  In this adversary

proceeding, the plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee")

for the bankruptcy estate of Mr. Ho Wan Kwok (the "Individual Debtor"), seeks to avoid alleged

actual fraudulent transfers and recover the value thereof from Meta as the initial transferee.

This memorandum of decision sets forth the Court's conclusions of law.  Fed. R. Bankr.

P. 7052.  For the reasons set forth below, the Motion to Dismiss is **DENIED**.

## II.     BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this

Court.  (Main Case ECF No. 1.)[1]  On June 15, 2022, presented with allegations related to the

Individual Debtor's financial mismanagement and an alleged shell game involving numerous

corporate *alter egos*, the Court entered a memorandum of decision and order appointing a

---

[1]  References to the docket in this adversary proceeding will be styled "ECF No. __".
References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled
"Main Case ECF No. __".

Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

On February 11, 2024, the Trustee commenced this adversary proceeding. (Complaint, ECF No. 1.) The complaint alleges two claims for relief:

(i)     Pursuant to sections 548(a)(1)(A) and 550(a) of title 11 (the "Bankruptcy Code"), the first claim seeks (a) avoidance of actual fraudulent transfers by the Individual Debtor of his property to Meta through his *alter ego* HCHK Technologies, Inc. ("HCHK Technologies"), which the Individual Debtor beneficially owns and controls; and (b) recovery of the value thereof from Meta as initial transferee. (Complaint ¶¶ 33–36.)

(ii)    Pursuant to or current sections 273(a)(1) and 276 of the New York Debtor and Creditor Law (the "NYDCL")[2] and sections 544(b) and 550(a) of the Bankruptcy Code, the second claim seeks (a) avoidance of actual fraudulent transfers by the Individual Debtor of his property to Meta through HCHK Technologies; and (b) recovery of the value thereof from Meta as initial transferee. (Complaint ¶¶ 37–40.)[3]

In total, the complaint alleges the Individual Debtor fraudulently transferred $593,350.62 to Meta prior to filing his bankruptcy petition. (Complaint ¶ 2.)

The complaint incorporates by reference the Trustee's complaint against, in pertinent part, HCHK Technologies – the entity the Trustee alleges the Individual Debtor utilized to make the transfers at issue. (Complaint ¶ 13 n. 4.) In the incorporated complaint, the Trustee alleges, among other things, HCHK Technologies, a Delaware entity, is an *alter ego* of, or it and its assets are beneficially owned by, the Individual Debtor. (Complaint, *Despins v. HCHK Techs., Inc.*,

---

[2] Effective April 4, 2020, New York adopted the Uniform Voidable Transactions Act ("NYUVTA"). Formerly, New York had enacted the Uniform Fraudulent Conveyances Act ("NYUFCA"). NYUFCA remains applicable to claims arising before April 4, 2020. However, the Trustee has alleged only NYUVTA claims in this adversary proceeding. (Complaint Schedule A.)

[3] The complaint contains typographical errors with respect to the NYDCL sections cited. The Trustee has clarified that he is not asserting constructive fraudulent transfer under section 274. Therefore, the Court will not consider Meta's arguments regarding constructive fraudulent transfer.

Case No. 22-50073 (JAM), Adv. P. No. 23-05013 (JAM) (Bankr. D. Conn. June 8, 2023), ECF No. 1 ¶¶ 9, 62–73.)

On June 28, 2024, Meta filed the Motion to Dismiss.  (ECF No. 18.)  At the time Meta filed the Motion to Dismiss, it was subject to mandatory mediation procedures that included a stay of proceedings on the Motion to Dismiss (*see* ECF No. 11), from which procedures Meta moved for, and was granted, an exemption (ECF Nos. 23, 30).  On November 12, 2024, the Trustee filed an objection to the Motion to Dismiss.  (ECF No. 36.)  On December 16, 2024, Meta filed a reply in support of the Motion to Dismiss.  (ECF No. 39.)  The Motion to Dismiss is fully briefed.

A hearing on the Motion to Dismiss was scheduled to be held on January 15, 2025.  Meta requested the hearing be continued and that request was granted.  (ECF Nos. 41, 42.)  On April 29, 2025, the continued hearing was held on the Motion to Dismiss.[4]  This matter is ripe for adjudication.

## III.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant matters are statutorily core proceedings.  28 U.S.C. §§ 157(b)(2)(A), (E), (H).  The Court concludes its

---

[4]  At the same time, a hearing was held on a similar motion to dismiss filed by Apple Inc. ("Apple") in the adversary proceeding styled *Despins v. Apple Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05060 (JAM) (Bankr. D. Conn. Mar. 26, 2025).  Meta and Apple advanced a joint argument during the hearing through the same counsel.  This Opinion is issued substantially contemporaneously with the Opinion regarding Apple's motion to dismiss and contains substantially similar contents.

exercise of jurisdiction is not precluded by Constitutional concerns.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.    DISCUSSION

In the Motion to Dismiss, Meta argues the Trustee has failed to state a claim for relief. Meta argues (i) the Trustee lacks standing to assert his claims on behalf of non-debtor transferors; (ii) the Trustee has failed to plead the Individual Debtor's fraudulent intent with particularity; and (iii) the Trustee has failed to put Meta on notice of the claims against it because he filed the transfer information in a sealed schedule.  In response, the Trustee argues he has not asserted claims on behalf of non-debtor transferors; has sufficiently pled the Individual Debtor's fraudulent intent; and has filed the transfer information under seal pursuant to applicable orders of the Court and would not oppose a motion to unseal the schedule on notice to the parties who produced the information to the Trustee.

### A.    Legal Standard

In determining whether the Trustee states claims upon which relief may be granted, *see* Fed. R. Civ. P. 12(b)(6), *made applicable by* Fed. R. Bankr. P. 7012(b), the Court must take the well-pled allegations in the complaint as true, *see Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 189 (D. Conn. 2009).  In addition to the allegations in the complaint, the Court must consider documents incorporated by reference and matters of which it may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court must draw all reasonable inferences in the Trustee's favor.  *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

Generally, to be well-pled, the Trustee's allegations must contain "a short and plain statement showing the pleader is entitled to relief". Fed. R. Civ. P. 8(a), *made applicable by* Fed. R. Bankr. P. 7008. The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard", while not a "probability requirement", requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

A heightened pleading standard applies to the fraudulent intent element of an actual fraudulent transfer under either the Bankruptcy Code or New York law, which must be pled with particularity. Fed. R. Civ. P. 9(b), *made applicable in this adversary proceeding by* Fed. R. Bankr. P. 7009; *see* 11 U.S.C. § 548(a)(1)(A); N.Y. DEBT. & CRED. LAW § 273(a)(1); *Kirschner v. Large S'holders (In re Trib. Co. Fraudulent Conv. Litig.)*, 10 F.4th 147, 159–60 (2d Cir. 2021) (Rule 9(b) applies to allegations of fraudulent intent required to plead actual fraudulent transfer under the Bankruptcy Code); *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (same under New York law). However, "[w]hen a trustee in bankruptcy pleads a claim of fraud, cases have held that the Rule 9(b) requirement of particularity is relaxed." *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 56 (Bankr. D. Conn. 2023) (quoting *Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P. (In re Bankr. Est. of Norske Skogindustrier ASA)*, 633 B.R. 640, 655 (Bankr. S.D.N.Y. 2021))

(alteration in original); *see also* 10 COLLIER ON BANKRUPTCY ¶ 7009.03 (16th ed. 2025) (collecting cases).

### B.    Statutory Standing

The Court turns first to Meta's argument on statutory standing.  During the hearing, Meta rested on its papers with respect to its standing argument, acknowledging the Court's adverse rulings in other adversary proceedings.  *See, e.g.*, Memorandum of Decision, *Kwok v. Agora Lab, Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05005 (JAM), 2025 WL 699666 (Bankr. D. Conn. Mar. 4, 2025) (omnibus memorandum of decision denying or denying in part several motions to dismiss).[5]  In response, the Trustee also rested on his papers and incorporated the Court's rationale in its prior decisions into his argument.

In its papers, Meta argues Delaware *alter ego* law does not create an identity between the Individual Debtor and HCHK Technologies.  Without such an identity, Meta argues the Trustee lacks standing under sections 544(b) and 548(a)(1) of the Bankruptcy Code to avoid a fraudulent transfer by HCHK Technologies, a non-debtor entity.  Meta asserts the Trustee would only have standing if he were to obtain *nunc pro tunc* substantive consolidation of HCHK Technologies' and the Individual Debtor's bankruptcy estates.  However, Meta contends *nunc pro tunc* relief would be inappropriate on the present facts.

The Trustee asserts he is not seeking to avoid transfers on behalf HCHK Technologies' bankruptcy estate but rather on behalf of the Individual Debtor's bankruptcy estate.  The Trustee alleges the Individual Debtor made the transfers at issue utilizing HCHK Technologies.

---

[5]  While the Court agrees with Meta that "a lot of ink has been spilled", the Court's previous decision was issued in a complex, omnibus procedural posture and is organized accordingly.  Although much of the following text appears in the prior decision, its organization is adjusted to meet the present circumstances.  In doing so, the Court does not depart from any of its conclusions reached in the prior decision and incorporates its reasoning by reference.

Although substantive consolidation may work a similar remedy, the Trustee argues his claims are different and he does not require *nunc pro tunc* relief.

The Court agrees with the Trustee. The Trustee alleges in the complaint the Individual Debtor transferred his assets through HCHK Technologies, a nominal transferor he beneficially owns and which is his *alter ego*. To wit, the Trustee alleges:

> 2. The Debtor, through his alter-ego shell company, HCHK Technologies, Inc. ("HCHK Technologies") transferred funds in the amount of $593,350.62 prior to the Petition Date (as defined herein) to the Defendant as the initial transferee.

(Complaint ¶ 2.) Similarly, the Trustee alleges the transferred property was the Individual Debtor's property:

> 24. The property of the Debtor's alter egos, including HCHK Technologies, was at all times prior to the Petition Date property of the Debtor.

(Complaint ¶ 24.)

While Meta contends the Trustee has engaged in artful drafting, the Court must consider the transfers the Trustee alleges. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 382 (2018). It bears repeating that this comes before the Court *on a motion to dismiss*, in which context the Court must take the well-pled allegations in the complaint as true and draw all inferences in the Trustee's favor. *Hughes*, 449 U.S. at 10; *Warren*, 744 F.3d at 843. Simply put, the matter before the Court is whether the Trustee has stated a claim for relief regarding the transfers he alleges – not those Meta wishes he alleged. The Court must determine whether, assuming the Trustee's well-pled allegations of *alter ego* or beneficial ownership in the incorporated complaint against the HCHK Technologies are true,[6] those claims support the

---

[6] Meta does not contest that these incorporated allegations state *alter ego* or beneficial ownership claims. The Court concludes Delaware law applies to these issues with respect to HCHK Technologies because the Trustee alleges it is a Delaware entity. *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) (forum state choice of law applies);

conclusion that the Trustee has plausibly pled the Individual Debtor transferred his property.   In assessing the alleged transfers, binding precedent requires the Court to look past the formal structure of a transaction to its economic reality.  *Orr v. Kinderhill Corp.*, 991 F.2d 31, 36 (2d Cir. 1993) (citing *Salomon Inc. v. United States*, 976 F.2d 837, 842 (2d Cir. 1992)).

Outside of bankruptcy, the Trustee's second claim could clearly be brought.[7]   Under NYUVTA, actual and constructive fraudulent transfers can be established by an *alter ego's* transfer of its property.  "'Debtor' means a person that is liable on a claim."  N.Y. DEBT. & CRED. LAW § 270(f).  Therefore, even assuming *arguendo alter ego* only creates vicarious *liability*, an *alter ego* is a "debtor" even if it is not a debtor under the Bankruptcy Code.  Because it is a debtor, an *alter ego* can make an avoidable transfer.  *See* N.Y. DEBT. & CRED. LAW §§ 273, 274. Moreover, property of an *alter ego* is property of a debtor.  N.Y. DEBT. & CRED. LAW §§ 270(b), (l), (p).  Therefore, in a state law action, *alter ego* can be used in conjunction with NYUVTA. *See Bravia Cap. H.K. Ltd. v. SL Green Realty Corp.*, No. 24-cv-2296 (JGK), 2025 WL 552046, at *9 (S.D.N.Y. Feb. 18, 2025) (applying NYUVTA and Delaware *alter ego* law).

Similarly, "[p]roperty" is defined as "anything that may be the subject of ownership", which is certainly capacious enough to include beneficial or equitable interests.  N.Y. DEBT. &

---

*see Weber v. U.S. Sterling Secs., Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of formation to *alter ego* action and other internal affairs regarding an LLC); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 303, 304.  Delaware recognizes reverse veil-piercing *alter ego* claims brought on behalf of creditors.  *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021).  Delaware also recognizes beneficial ownership.  *See, e.g.*, *Hudak v. Procek*, 806 A.2d 140 (Del. 2002).  Upon a review of the incorporated complaint, the Court concludes for the purposes of the present Opinion that the relevant *alter ego* and beneficial ownership allegations state claims for relief.

[7]  Section 544(b) states "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . .."  Hence, the Bankruptcy Code imposes additional elements when a trustee brings a state law fraudulent transfer claim.  Relevant to the instant Opinion, section 544(b) requires the transfer to have been "of an interest of the debtor in property".  This element will be discussed below.

CRED. LAW §§ 270(b), (l).  Such interests may be held liable for the debts of a judgment debtor

under New York law.  *See, e.g.*, *In re Gliklad v. Chernoi*, 12 N.Y.S.3d 65 (N.Y. App. Div. 2015)

(affirming order requiring judgment debtor to turn over beneficial ownership of a business);

*Guilder v. Corinth Constr. Corp.*, 651 N.Y.S.2d 706 (N.Y. App. Div. 1997) (remanding case to

determine whether individual defendants equitably owned a corporate defendant and whether the

plaintiff could pierce the corporate veil between the corporate defendant and its potential

equitable owners); *Pac. All. Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No.

652077/2017, 2022 WL 406636 (N.Y. Sup. Ct. Feb. 9, 2022) (determining judgment debtor

beneficially owned yacht in action to collect on judgment); *see also Paloian ex rel. Dordevic v.

Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021) (applying federal common

law in absence of articulated state law standard), *aff'd by* 67 F.4th 372 (7th Cir. 2023).  Hence,

beneficial ownership may also be utilized in a NYUVTA action.

Accordingly, the question is whether the Bankruptcy Code allows the Trustee to use *alter

ego* and beneficial ownership allegations to assert the Individual Debtor transferred his property.

The question is in turn divided into (1) whether under the Bankruptcy Code *alter ego* or

beneficial ownership allegations may be used to assert the Individual Debtor is the Transferor;

and (2) whether under the Bankruptcy Code *alter ego* or beneficial ownership allegations may be

used to assert the transferred property is, or would have been but for the transfer, property of the

estate.

### 1.     Does the complaint plausibly plead the Individual Debtor is the transferor?

To plead actual fraudulent transfer under the Bankruptcy Code, a trustee must plead the

debtor made the transfer at issue.  11 U.S.C. § 548(a)(1)(A).  The Bankruptcy Code does not

require a trustee plead the debtor was the transferor to bring state law claims, including actual

fraudulent transfer claims.  11 U.S.C. §§ 544(b).  Hence, the following discussion only impacts the Bankruptcy Code actual fraudulent transfer claim—the first claim of the complaint.

The Court concludes a debtor may use an *alter ego* as a "mode, direct or indirect, . . . of parting with—(i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D).  The United States Court of Appeals for the Second Circuit has ruled that *alter ego* may be used to assert a party is the actual transferor in a fraudulent transfer action brought under the former Bankruptcy Act.  In *McNellis v. Raymond*, the Second Circuit affirmed the district court both (a) in piercing the corporate veil and holding the individual rather than his corporation took out a loan he personally repaid; and (b) in refusing to pierce the same corporate veil and holding said loan was not usurious because it was made to the individual's corporation – not him.  420 F.2d 51, 53–54 (2d Cir. 1970).  The Second Circuit concluded, while fraudulent conveyance law allowed courts to pierce form in favor of substance, New York's usury law had developed to allow individuals to use a corporate *alter ego* to take out an otherwise usurious loan.  *McNellis*, 420 F.2d at 53–54.

*McNellis* remains binding law.  Courts "do not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure".  *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998).  In interpreting the Code, courts presume Congress's "familiarity with the prevailing understanding" of the former Bankruptcy Act.  *Johnson v. Home State Bank*, 501 U.S. 78, 86 (1991).  There is no clear indication that Congress intended to overrule *McNellis*.  *Compare* 11 U.S.C. §§ 101(54), 541(a), 544(b), 548(a), 549(a) *with* 11 U.S.C. §§ 1(30) (former Bankruptcy Act of 1898, section 1) (repealed 1978), 107(d) (former Bankruptcy Act of 1898, section 67) (repealed 1978), 110(a), (d), (e) (former Bankruptcy Act of 1898, section 70) (repealed 1978).

Similarly, the Court concludes a debtor may use an entity it beneficially owns or controls to indirectly transfer property.  11 U.S.C. § 101(54)(D).  Insofar as the Individual Debtor beneficially owns the alleged shell companies, such entities are his affiliates through which he can indirectly transfer assets.  11 U.S.C. §§ 101(2), (15), (41).  Courts have collapsed transactions involving affiliates.  *See, e.g.*, *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 208–210, 212–13 (3d Cir. 1990) (affirming district court where fraudulent transfer involved owners laundering the assets of one company they owned to another as part of an overall scheme to make assets unavailable to creditors).

### 2.     Does the complaint plausibly plead the transferred property was property of the Individual Debtor?

The Bankruptcy Code requires a trustee's state law actual fraudulent transfer claims and Bankruptcy Code actual fraudulent transfer claims involve a transfer of an interest of the debtor in property.  11 U.S.C. §§ 544(b), 548(a)(1)(B).  An interest of the debtor in property is property that, but for the transfer to be avoided, would be property of the estate.  *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) (defining property of the debtor with respect to preferential transfers).  Hence, whether property of an *alter ego* or beneficially owned property is property of the estate is the touchstone of the present analysis.

Where the Bankruptcy Code is silent, state law determines what interests parties have in property.  *Butner v. United States*, 440 U.S. 48, 54–57 (1979).  However, *Butner* also holds Congress has authority under Article I, section 8, clause 4 of the Constitution to define property interests contrary to state law for the purposes of bankruptcy.  *Butner*, 440 U.S. at 54–57 (holding it is a matter of state law whether, when, and how a mortgagee obtains a security interest in rents because the former Bankruptcy Act of 1898, as amended, did not include a provision providing or denying mortgagees such a security interest).

Congress defined property of the estate. 11 U.S.C. § 541. "Congress intended a broad range of property to be included in the estate", including "property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *United States v. Whiting Pools*, 462 U.S. 198, 204–05 (1983) (affirming Second Circuit determination that property of the estate included property seized by the Internal Revenue Service to enforce a tax lien prior to the filing of the bankruptcy petition). Therefore, consistent with *Butner* and *Whiting Pools*, courts have generally held that while state law determines what interests a debtor has in property, federal law determines whether those interests in property are included in property of the estate. *Lowe v. Bowers (In re Nicole Gas Prod., Ltd.)*, 916 F.3d 566, 573 (6th Cir. 2019); *Abboud v. Ground Round, Inc. (In re The Ground Round, Inc.)*, 482 F.3d 15, 17 (1st Cir. 2007); *In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985).

The Trustee may seek to avoid transfers of property the Individual Debtor beneficially owned at the time of the transfer. By definition, property of the estate includes property a debtor beneficially owns. The estate is, among other things, "comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case", "wherever located and by whomever held". 11 U.S.C. § 541(a).

The Court concludes the Trustee may also seek to avoid transfers of property nominally owned by the Individual Debtor's *alter egos*. An *alter ego* claim is property of the estate. *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 104–06 (2d Cir. 2024) (holding *alter ego* claim under New York law is property of the estate). This is true as a matter of federal bankruptcy law even if at state law *alter ego* is a claim for the imposition of vicarious liability, not an independent cause of action. *Nordlicht*, 115 F.4th at 109–111. *Nordlicht* determined that

13

alter-ego theories of liability neatly fall[] within the Bankruptcy Code's definition of 'claim':

(A)      *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)      *right to an equitable remedy* for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

115 F.4th at 110 (emphasis in original). *Nordlicht* is in accord with the plain text of the Bankruptcy Code: a trustee in bankruptcy is deemed to be a judgment creditor – *to have already succeeded on a deemed companion claim*. 11 U.S.C. § 544(a).

Alter ego claims are property of the estate because they "'inure[] to the benefit of all creditors' by enlarging the estate", *Nordlicht*, 115 F.4th at 105 (alteration in original); *see In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) (holding that successor liability claims are property of the estate because, like *alter ego* claims, they are general claims of creditors). A trustee may recover on *alter ego* claims to the full extent of claims asserted against the estate. *See Moore v. Bay (In re Est. of Sassard & Kimball, Inc.)*, 284 U.S. 4, 5 (1931) (holding, with respect to predecessors of section 544(b) claims, the trustee could recover on an avoided transfer for the estate's creditors at large).

Property recoverable by a trustee under provisions of the Bankruptcy Code is property of the estate. *Whiting Pools*, 462 U.S. at 204–07. Because a bankruptcy trustee can bring an *alter ego* claim, the property of an *alter ego* of a debtor is property of the estate and the Individual Debtor had an interest in that property pre-petition. *See Nordlicht*, 115 F.4th at 105 (*alter ego* claims "'inure[] to the benefit of all creditors' by enlarging the estate"); *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein)*, 192 F.3d 88, 95 (3d Cir. 1999) (holding court had jurisdiction to

14

determine appeal of a ruling on, among other things, creditor's claim that certain corporations were *alter egos* of the debtor because a determination that they were his *alter egos* "would result in the inclusion in his bankruptcy estate of substantial assets which then would be available to satisfy, at least in part, his creditors' claims."); *Green v. Bate Recs., Inc. (In re 10th Ave. Rec. Distribs., Inc.)*, 97 B.R. 163, 166 (S.D.N.Y. 1989) (holding trustee had standing to bring *alter ego* claim because it was "an attempt to collect property of the estate for the benefit of *all* creditors and is not personal to any particular creditor") (emphasis in original).

* * *

For the reasons stated above, the Court concludes a bankruptcy trustee may seek to avoid transfers by a debtor through an *alter ego* of the debtor or an entity beneficially owned by the debtor of property nominally owned by the *alter ego* or beneficially owned by the debtor.[8] Therefore, the Trustee has plausibly pled the Individual Debtor transferred his property.

The Court's determinations regarding the Trustee's beneficial ownership allegations, which Meta did not contest, are sufficient to support this conclusion. Nevertheless, the Court has

---

[8] Accordingly, the Court concludes the Trustee is not required to seek *nunc pro tunc* substantive consolidation. While the results of *alter ego* in a bankruptcy proceeding may be similar to those of substantive consolidation, it is a distinct doctrine with distinct elements. *See In re Owens Corning*, 419 F.3d 195, 205–06 (3d Cir. 2005) ("Prior to substantive consolidation, other remedies for corporate disregard were (and remain) in place. For example, where a subsidiary is so dominated by its corporate parent as to be the parent's 'alter ego,' the 'corporate veil' of the subsidiary can be ignored (or 'pierced') under state law."); *Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, Case No.: 2:18-bk-01594-DPC, Adversary No.: 2:19-ap-00412-DPC, 2022 WL 2294175, at *8 (Bankr. D. Ariz. June 22, 2022) ("Substantive consolidation is better thought of as an economic remedy, the primary goal being the equitable treatment of all creditors. Conversely, a state law alter ego claim is an equitable remedy focused on preventing 'fraud or injustice.'"). Moreover, *alter ego* does not seek *nunc pro tunc* relief – *alter ego* seeks a remedy based on existing facts, just as a breach of contract claim seeks a remedy on existing facts. *See Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 749 n. 9 (N.D. Ill. 2022) (rejecting "confusing" argument that an *alter ego* determination would be impermissibly retroactive in a bankruptcy case).

15

also reached the above conclusion regarding the interaction of *alter ego* and the Bankruptcy Code's avoidance provisions. It is not a novel conclusion. *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 66–68 (S.D. Tex. 2007) (applying Delaware *alter ego* law); *see Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, Case No.: 2:18-bk-01594-DPC, Adversary No.: 2:19-ap-00412-DPC, 2020 WL 6821721, at *4–6 (Bankr. D. Ariz. Sept. 30, 2020) (applying Nevada *alter ego* law); *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 743–48 (Bankr. W.D. La. 2008) (same); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 145–47 (Bankr. N.D. Cal. 2005) (applying California *alter ego* law), *upheld in pertinent part on reconsideration* 345 B.R. 674, 676–77 (Bankr. N.D. Cal. 2006) (upholding *alter ego* determination).

In coming to its conclusion, the Court respectfully disagrees with Meta's argument that the decision of the United States Court of Appeals for the Sixth Circuit in *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482 (6th Cir. 2017), should control in this adversary proceeding. In *Howland*, the Sixth Circuit held property of an *alter ego* is not property of the estate and cannot be recovered when transferred where, at state law, *alter ego* merely imposes vicarious liability. 674 F. App'x at 487; *accord Lippe v. Bairnco Corp.*, 230 B.R. 906, 914–15 (S.D.N.Y. 1999); *Grimmett v. McCloskey (In re Wardle)*, BAP No. NV-05-1000-KMB, Bankruptcy No. S-01-21542-BAM, Adversary No. S-03-01467, 2006 WL 6811026 (B.A.P. 9th Cir. Jan. 31, 2006); *Stevenson v. William Noble Rare Jewels L.P. (In re DuMouchelle)*, 667 B.R. 122 (Bankr. E.D. Mich. 2023) (applying *Howland*); *Evangelista v. Silver (In re Silver)*, 647 B.R. 897 (Bankr. E.D. Mich. 2022) (same).[9]

---

[9] While *Silver* and *DuMouchelle* applied *Howland*, it was not selected for publication and is not binding on the Sixth Circuit. 6 Cir. R. 32.1(b).

The Court is not persuaded by *Howland* for several reasons in addition to the analysis above.  First, the Sixth Circuit's approach to *alter ego* claims in avoidance actions is contrary to the Second Circuit's directive that courts must consider the substance, rather than the form, of a fraudulent transfer.  *See Orr*, 991 F.2d at 35; *see also Boyer v. Crown Stock Dist., Inc.*, 587 F.3d 787, 792 (7th Cir. 2009); *Voest-Alpine*, 919 F.2d at 211–12.  There is capacity in fraudulent transfer law to look past the nominal parties to a transaction where state law allows the corporate form to be disregarded.  *McNellis*, 420 F.2d at 53; *ASARCO*, 382 B.R. at 65–68.  This capacity to recognize economic reality is reflected in the expansive definitions of transfer and property of the estate in the Bankruptcy Code.  11 U.S.C. §§ 101(54)(D), 541.

Second, *Howland* is also contrary to how *alter ego* and avoidance claims interact under state law.  Avoidable transfer and *alter ego* law both seek to thwart judgment evasion and can, unsurprisingly, be used together in collection actions outside of bankruptcy.  As outlined above, *alter ego* can be used in NYUVTA claims outside of bankruptcy to target transactions where the *alter ego* is both the nominal transferor and the nominal owner of the transferred property. *Bravia Cap.*, 2025 WL 552046, at *9.  *Alter ego* may be similarly used under NYUFCA.  Under NYUFCA, assets are defined to include all property that is liable for any debts of the debtor. N.Y. DEBT. & CRED. LAW § 270 (effective as to claims arising prior to April 4, 2020).  The property of an *alter ego* of a judgment debtor is liable for the debts of the judgment debtor and, hence, transfers of such property may be avoided under NYUFCA.  *JSC Foreign Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379–80 (S.D.N.Y. 2003).

Moreover, this is not only the law in New York; it is the law of most – and perhaps all – jurisdictions within the United States.  The Uniform Fraudulent Transfer Act ("UFTA") – which

was promulgated after the Uniform Fraudulent Conveyance Act ("UFCA") and before the

Uniform Voidable Transactions Act ("UVTA") – has the same definition of debtor as NYUVTA

and, hence, an *alter ego* is a debtor under UFTA.  *See, e.g.*, CONN. GEN. STAT. § 52-552b (6)

(Connecticut has adopted the UFTA).  The UFCA, UFTA, or UVTA is effective in forty-seven

(47) states and the District of Columbia.  5 COLLIER ON BANKRUPTCY ¶ 544.06[2]; *see, e.g.*,

*Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911, 2019 WL 5390470, at *4–5 (Nev. 2019) (table

disposition); *Thompson Props. v. Birmingham Hide & Tallow Co., Inc.*, 839 So. 2d 629, 633–34

(Ala. 2002); *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2016 WL

769586, at *3 (Del. Ch. Feb. 18, 2016); *Dwyer v. Meramec Venture Assocs., L.L.C.*, 75 S.W.3d

291, 294–95 (Mo. Ct. App. 2002); *U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137

F. Supp. 3d 1340, 1367–68 (S.D. Ga. 2015).  Moreover, this is longstanding law: UFCA – the

oldest of the three uniform acts – is more than one hundred years old.

The result should be no different in bankruptcy.  To the extent bankruptcy is a creditor

process, it is a collective collection proceeding.  *Merit Mgmt. Grp.*, 583 U.S. at 370–71.  This is

*why* the Trustee has standing to assert (i) general claims for the benefit of creditors at large, 11

U.S.C. § 544(a); *see Nordlicht*, 115 F.4th at 105; and (ii) particular avoidance claims of actual

creditors, 11 U.S.C. § 544(b), to the full extent of the transfer – even if the actual creditors' debt

is less than the transferred amount, *Moore*, 284 U.S. at 5.  Bankruptcy "shields creditors from

one another by replacing 'race' and other preferential systems of debt collection with a more

equitable and orderly distribution of assets."  *In re Alyucan Interstate Corp.*, 12 B.R. 803, 806

(Bankr. D. Utah 1981) (discussing purpose of the automatic stay) (citing *Fidelity Mortg. Invs. v.

Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976) (case under the former Bankruptcy Act of

1898, as amended)).  It would undermine the collective nature of bankruptcy to send creditors on

a race to the courthouse to pursue *alter ego* and fraudulent transfer remedies – remedies they may have no standing to pursue during the pendency of the Individual Debtor's bankruptcy. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704–05 (2d Cir. 1989).

Even if creditors *could* bring these actions outside of bankruptcy, the costs to do so would be high: the Trustee's investigation into the Individual Debtor's financial affairs has been highly litigated and time consuming. Forcing creditors to pursue these avoidance actions outside of bankruptcy or forego their prosecution would promote an inequitable and uneven recovery for the Individual Debtor's creditors, many of whom likely could not pay the fees and costs associated with such an effort. *See Union Bank v. Wolas*, 502 U.S. 151, 160–61 (1991) (section 547 is designed to balance related goals of preventing a race to the courthouse and providing for an equitable distribution to all creditors); *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 40–41 (2d Cir. 1996) (same). The Trustee is the person to pool the creditors' interests in the estate and bring the avoidance actions for their collective benefit. 11 U.S.C. §§ 323, 541–50.

Third and finally, *Howland* also runs contrary to Delaware *alter ego* law. It is an accident of our legal system that, generally, *alter ego* results in vicarious liability – the *alter ego* doctrine is about disregarding the corporate form where it is abused and causes fraud or injustice. *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction."). As the Delaware Court of Chancery observed "[a]t its most basic level, reverse veil-piercing involves the imposition of liability on a business organization for the liabilities of its owners", *Manichaean Cap.*, 251 A.3d at 710 (action to collect on

19

appraisal judgment), *because* "where the subsidiary is a mere alter ego of the parent . . . the Court [will] treat the assets of the subsidiary as those of the parent", *id.* (alteration in the original).

Most relief in the common law takes the form of money damages. The primary use of an *alter ego* claim is to spread liability from a defendant liable at law for money damages on, *e.g.*, tort or contract to a defendant with deeper pockets. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) ("Nonetheless, in appropriate circumstances, the distinction between the entity and its owner 'may be disregarded' to require an owner to answer for the entity's debts.") (action on contract); *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 294 (S.D.N.Y. 2011) ("A plaintiff seeking to hold the owners of a corporation liable for the corporation's debts 'faces a difficult task.'") (action on fraud); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) ("Under Delaware law, veil piercing is a doctrine of equity. . . . Veil piercing is thus not a purely independent cause of action. Instead, piercing the corporate veil *effectively* amounts to the imposition of joint and several liability between a direct actor and its corporate affiliate for some underlying wrong committed by the direct actor.") (action on tort) (emphasis added).

However, the avoidance of a transfer is not money damages. "[T]he purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate". *Begier*, 496 U.S. at 59 (discussing section 547 and the avoidance of preferential transfers); *see In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002) ("Fraudulent conveyance law aims 'to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away.'"); *Sapir v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*, 881 F.2d 6, 9–10 (2d Cir. 1989) (holding that allowing an

administrative claim holder to keep unauthorized post-petition transfers would be inequitable to other creditors who have similar claims).  To this end, the relief provided by sections 548 and 549 of the Bankruptcy Code and section 273 and 274 of NYUVTA is *avoidance* of the subject transfer – not money damages.  11 U.S.C. §§ 548, 549; N.Y. DEBT. & CRED. §§ 273, 274.

Upon avoidance of the transfer, section 550(a) of the Bankruptcy Code and section 276(b) of NYUVTA allow recovery of the *specific property* transferred, the value thereof, or the proceeds thereof.  11 U.S.C. § 550(a); N.Y. DEBT. & CRED. § 276(b).  It is, therefore, entirely unsurprising that disregarding the corporate form and treating the assets of the *alter ego* as the assets of the debtor operates differently with regard to avoidance actions than it does with regard to other actions.  *See Manichaean Cap.*, 251 A.3d at 710 ("In the parent/subsidiary context, 'where the subsidiary is a mere alter ego of the parent . . . the Court [will] treat the assets of the subsidiary as those of the parent.'").

"Delaware will not countenance the use of the corporate form as a means to facilitate fraud or injustice."  *Manichaean Cap.*, 251 A.3d at 714.  Fraudulent and unauthorized post-petition transfer law align with this purpose.  They exist to prevent inequitable results arising from the dissipation of assets.  *See Begier*, 496 U.S. at 59; *PWS Holding Corp.*, 303 F.3d at 313; *Photo Promotion Assocs.*, 881 F.2d at 9–10.  It would be fundamentally absurd and contrary to the purpose of the doctrine, if *alter ego* could not be used to prevent fraud or injustice resulting from a fraudulent or unauthorized post-petition transfer.  These two bodies of law can be used together.  *McNellis*, 420 F.2d at 53; *ASARCO*, 382 B.R. at 65–68; *see Bravia Cap.*, 2025 WL 552046, at \*9; *Technostroyexport*, 295 F. Supp. 2d at 379–80; *see also Spring Real Est.*, 2016 WL 769586, at \*3.

### C.      Fraudulent Intent

The Court turns next to Meta's argument that the Trustee has failed to plead the transferor's fraudulent intent with particularity.  Meta asserts that the transferor at issue is HCHK Technologies – not the Individual Debtor – and, in any event, the Trustee has not adequately pled the Individual Debtor's fraudulent intent as to each individual transfer.  In response, the Trustee argues the Individual Debtor is the transferor and the complaint alleges several badges of fraud with requisite particularity, including the Individual Debtor's overall course of conduct intended to hinder, delay, or defraud his creditors.

As stated above, the Individual Debtor – not HCHK Technologies – is the alleged transferor.  (Complaint ¶ 2.)  Hence, the Court will analyze the complaint regarding the Individual Debtor's fraudulent intent.  11 U.S.C. § 548(a)(1)(A); N.Y. DEBT. & CRED. LAW § 274(a)(1).  Because "[f]raudulent intent is rarely susceptible to direct proof . . . courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983) (internal citations omitted).  Badges of fraud may include, among other things:

(1)      the lack or inadequacy of consideration;

(2)      the family, friendship or close associate relationship between the parties;

(3)      the retention of possession, benefit or use of the property in question;

(4)      the financial condition of the party sought to be charged both before and after the transaction in question;

(5)      the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)      the general chronology of the events and transactions under inquiry.

*Kaiser*, 722 F.2d at 1582–83.

Unlike in *Geron v. Central Park Realty Holding Corp. (In re Nanobeak Biotech Inc.)*, wherein the bankruptcy trustee failed to allege badges of fraud, the Court concludes the Trustee has alleged several badges of fraud with requisite particularity.  656 B.R. 350, 367–68 (Bankr. S.D.N.Y. 2024) (granting motion to dismiss actual fraudulent transfer claim without prejudice because unalleged badges of fraud were present).  The Trustee has alleged (a) the Individual Debtor's lack of capitalization and inability to make payments to creditors, *e.g.*, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), with whom he was engaged in active collection litigation since at least 2017, as they came due both before and after the transfers (*id.*  ¶¶ 11, 19, 21); and (b) a pattern of transactions designed to leave the Individual Debtor judgment proof while he provided for an expensive lifestyle for himself and his family and renumerated and rewarded his associates and employees (*id.* ¶¶ 13–21, 26–29).  Hence, the Trustee has alleged the fourth through sixth badges of fraud set forth in *Kaiser*.  The Court concludes the Trustee has pled fraudulent intent with the requisite particularity.  *See Eight-115 Assocs., LLC*, 650 B.R. at 56.

### D.      Sealing

Finally, the Court turns to Meta's argument that the Trustee has failed to put Meta on notice of the claims against it because he has filed the transfer information under seal.  Meta asserts it does not matter that the Trustee did so pursuant to the Court's order – the Trustee should have sought relief from the order if he wanted to sue Meta.  The Trustee argues Meta should either sign the protective order to receive the transfer information or file a motion to unseal it, which motion the Trustee would not oppose so long as it were on notice to the parties that produced the relevant information to the Trustee and deemed such information confidential or highly confidential under the protective order.

The Court agrees with the Trustee.  The Trustee filed transfer information under seal in compliance with this Court's order because that information was produced to him as confidential or highly confidential under the applicable protective order.  (Avoidance Action Procedures Order ¶ 2(d), Main Case ECF No. 3163.)  The Court concludes the Trustee's compliance with this Court's order provides no basis to dismiss the complaint.  Meta may move to unseal the schedule of transfers.

## V.      CONCLUSION AND ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED:**  The Motion to Dismiss is **DENIED**.  The Trustee and Meta shall meet and confer regarding a date for Meta to file an answer to the complaint.

Dated at Bridgeport, Connecticut this 29th day of July, 2025.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut